**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     1801 ROBERT FULTON | ) | Case No. 11-12753-BFK |
|     DRIVE, LLC | ) | Chapter 11 |
| | ) | |
|         Debtor | ) | |
| | ) | |
| SUNRISE OAK PROFESSIONAL | ) | |
| PARK CONDOMINIUM UNIT | ) | |
| OWNERS ASSOCIATION | ) | |
| | ) | |
|         Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 11-01335 |
| | ) | |
| 1801 ROBERT FULTON | ) | |
| DRIVE, LLC, *et al.* | ) | |
| | ) | |
|         Defendants | | |

**MEMORANDUM OPINION**

This matter comes before the Court on the Defendant's Motion for Summary Judgment (Docket No. 13), and the Plaintiff's Motion for Summary Judgment (Docket No. 19). Both Motions seek the Court's determination of the meaning and intent of the Declaration of Condominium of the Sunrise Oak Professional Park Condominium, as it relates to the ability of the Defendant-Declarant to withdraw the land described as Parcel 3-A, together with certain parking spaces allocated to the Plaintiff and its unit owners. For the reasons stated below, the Defendant's Motion will be denied, and the Plaintiff's Motion will be granted in part.

**Jurisdiction**

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for the Eastern District of Virginia on August 15, 1984. This

1

is a core proceeding under 28 U.S.C. § 157(b), because it involves a determination of what is, and is not, property of the bankruptcy estate under 11 U.S.C. § 541(a). This is so even though the determination to be made turns entirely on State law. *See* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law"); *Butner v. United States,* 440 U.S. 48, 54 (1979) ("Apart from these [avoidance] provisions, however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law").

## Standard for Summary Judgment Motions

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* In this case, the Declaration of Condominium is the controlling document. As more fully set forth below, the Court views the Declaration to be unambiguous with respect to the parties' rights in this adversary proceeding. Accordingly, the matter is appropriate for a ruling on summary judgment.

**Statement of Undisputed Facts**

The Court finds that the following facts are not genuinely disputed:[1]

1. On April 4, 2005, the Defendant, 1801 Robert Fulton Drive, LLC (hereinafter, the "Declarant") caused to be recorded in the land records of Fairfax County, the Declaration of Sunrise Oak Professional Park Condominium (hereinafter, "the Declaration"). Plaintiff's Motion, Exhibit 2. The Condominium consists of 30 units in a five story office building, as well as certain common and limited elements.

2. Exhibit D to the Declaration provides that there are a total of 311 parking spaces allocated to the Sunrise Oak Condominium, 250 of which are allocated to the specific units within the Condominium. *Id*. at Exh. D.

3. The Declaration also provides that the Declarant has the right to withdraw the land described as Parcel 3-A, for a period of up to seven years, in accordance with Virginia Code Sections 55-79.54(d) and 55-79.64. *Id*. at ¶¶ 1.4(a), 4.1. Parcel 3-A is described by metes and bounds on Exhibit A-1, and is depicted on Exhibit C-1, to the Declaration.

4. Each of the condominium purchasers within the Sunrise Oak Professional Park Condominium would have acknowledged receiving disclosure documents, which included the Declaration and Exhibits A-1 and C-1 to the Declaration.

5. In February 2006, the Period of Declarant Control ended, owing to the conveyance of three-fourths or more of the undivided interest in the common elements to the unit owners. Condominium Bylaws, ¶ 1.3(d).

6. In April 2006, the Declarant engaged Vika Virginia, LLC, a civil engineering firm, to prepare a Site Plan for Parcel 3-A. The Site Plan proposes a four story office building, together

---

[1] This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3

with underground parking. The Site Plan proposes to use 114 parking spaces that are located on Parcel 3-A, and which were previously allocated to the Condominium and/or its unit owners. The Declarant also prepared a permanent easement, so that the Sunrise unit owners would have access to, and the use of, many of the parking spaces subsequent to the development of Parcel 3-A.

7. Vika, on behalf of the Declarant, submitted the Site Plan to the Fairfax County Works Department, in December 2006. After review of the Site Plan, the Works Department recommended certain changes.

8. On May 15, 2007, representatives of the Declarant met with representatives of the Association to discuss the proposed withdrawal of Parcel 3-A from the Condominium, the parking spaces, and the Site Plan. Exactly what was said at this meeting is the subject of some dispute.

9. The Declarant maintains that the Association, with full knowledge of the submission of the Site Plan, sat back and did nothing in response. The Association, on the other hand, maintains that it expressed its concerns with County officials on more than one occasion.

10. In any event, the Declarant determined to proceed with its withdrawal of Parcel 3-A.

11. The Declarant made the changes requested by the Works Department, and the Site Plan was re-submitted on or about June 13, 2007.

12. The Site Plan was approved by the Works Department on or about July 26, 2007.

13. The Declarant recorded in the land records of Fairfax County a Withdrawal Amendment to the Declaration, withdrawing Parcel 3-A, on January 6, 2009 (and, re-recorded the same as a Withdrawal Amendment on January 9, 2009).

14. The Withdrawal Amendment (Section II – "Declaration of Easements") purports to create the easement described above, granting the unit owners of the Condominium access to, and the use of, the parking spaces (designated as the "1801 RFD Spaces") located on Parcel 3-A, and more particularly described in a Parking Exhibit attached as Exhibit B to the Withdrawal Amendment.[2]

15. On March 28, 2011, the Association filed suit against the Declarant in the Circuit Court of Fairfax County (the "Fairfax County Action"), seeking a Declaration that the Withdrawal Amendment and the Site Plan were not authorized, and seeking to quiet title.

16. On April 14, 2011, the Declarant filed a voluntary petition under Chapter 11, in this Court. The Debtor remains in possession, and no trustee has been appointed.

17. On June 23, 2011, the Association removed the Fairfax County Action to this Court pursuant to 28 U.S.C. § 1452.

18. Both the Declarant and the Association have moved for summary judgment pursuant to Bankruptcy Rule 7056. The matter has been fully briefed, and the Court has heard oral argument. Both motions are ripe for decision.

## Discussion

Whether or not the Declarant can withdraw the land (Parcel 3-A) is not genuinely in dispute. What is in dispute is whether the Declarant can withdraw the land in the way that it seeks to do so, by re-allocating the previously allocated parking spaces and granting the Association a permanent easement to use its parking spaces on the newly created Lot 3-A. The

---

[2] The Withdrawal Amendment also purported to reallocate certain parking spaces during the Construction Phase, as more particularly laid out in the Proposed Construction Haul Route, attached to the Withdrawal Amendment as Exhibit C.

Court finds that, under the plain and unambiguous language of the Declaration, the Declarant cannot proceed in this fashion.

   1. *The Plain Meaning of the Declaration Prohibits the Proposed Re-Allocation of the Allocated Parking Spaces.*

We begin with a review of the applicable condominium statute and the Declaration itself.

Section 55-79.54(d) of the Virginia Code provides as follows:

> If the condominium is a contractable condominium, the declaration shall also contain the following:
>
> (1) The explicit reservation of an option to contract the condominium.
>
> (2) A statement of any limitations on that option, including, without limitation, a statement as to whether the consent of any unit owners shall be required, and if so, a statement as to the method whereby such consent shall be ascertained; or a statement that there are no such limitations.
>
> (3) A time limit, not exceeding seven years from the recording of the declaration, upon which the option to contract the condominium shall expire, together with a statement of the circumstances, if any, which will terminate that option prior to the expiration of the time limit so specified.
>
> (4) A legal description by metes and bounds of all land that may be withdrawn from the condominium, henceforth referred to as "withdrawable land."
>
> (5) A statement as to whether portions of the withdrawable land may be withdrawn from the condominium at different times, together with any limitations fixing the boundaries of those portions by legal descriptions setting forth the metes and bounds thereof and/or regulating the order in which they may be withdrawn from the condominium.
>
> (6) A legal description by metes and bounds of all of the submitted land to which the option to contract the condominium does not extend.
>
> Provided, that plats may be recorded with the declaration and identified therein to supplement information furnished pursuant to items (4), (5) and (6) of this subsection, and that item (6) of this subsection shall not be construed in derogation of any right the declarant may have to terminate the condominium in accordance with the provisions of § 55-79.72:1.

Va. Code § 55-79.54(d).  The Declaration of Condominium provides as follows:

      Section 4.1 <u>Contraction</u>. Declarant hereby explicitly reserves an option, until the seventh anniversary of the recordation of this Declaration, to contract the Condominium from time to time in compliance with Sections 55-79.54(d) and 55-79.64 of the Condominium Act, without the consent of any Unit Owner or Mortgagee. The option to contract may be terminated prior to such anniversary only upon the filing of an amendment to the Declaration by the Declarant. Declarant expressly reserves the right to withdraw any or all portions of the Withdrawable Land, *including parking spaces thereon in excess of allocated spaces*, at any time, at different times, in any order, without limitation; provided, however, that the Withdrawable Land shall not exceed the area described on Exhibits A-1 and C-1 attached hereto. Any increase in the floor area ratio ("FAR") of the existing Condominium, including any additional building and/or development rights under current or future zoning, shall be allocated to the Withdrawable Land, and shall accrue only to the benefit of the Declarant. Provided, however, any such contraction shall comply with all county zoning, site plan and subdivision regulations applicable to the existing condominium. No consent of any Unit Owner shall be required to contract the Condominium and there are no other limitations on the option to contract. In connection with such option, the Board shall sign all necessary Zoning and/or land use applications as necessary or desirable to implement such option.

      Section 4.2 <u>Easements</u>. Declarant shall have the right, until the seventh anniversary of recordation of this Declaration and pursuant to Section 55-79.65 etc., in connection with the granting of the option to contract the Condominium described above, to grant and reserve easements and rights of way through, under, over and across the Property for emergency ingress-egress purposes for Fairfax County and other emergency vehicles, construction purposes, and for the installation, maintenance and inspection of the lines and appurtenances for public or private water, sewer, drainage, gas, electricity, telephone, television reception, and other utilities; and, property for parking, ingress, egress and utilities.

(Emphasis Added).

      The parties agree that Section 4.1 contains the critical language at issue. The Declarant argues that this language is "inclusive," which is to say, should be broadly construed to accomplish its purpose, which plainly, is to allow the withdrawal of Parcel 3-A. The Declarant further argues that the graphic descriptions of Parcel 3-A in Exhibits A-1 and C-1 to the Declaration are more specific, and should be accorded more weight by the Court in its interpretation of the Declaration. The Association, for its part, maintains that Section 4.1 is

7

unambiguous, and that the previously allocated parking spaces cannot be re-allocated. The Court holds that the Association's position is the better reading of the Declaration.

First, under Virginia's well-accepted rules of contract interpretation, the Court must look to the plain meaning of the contract, and the Court is not free to re-write the agreement of the parties. *Capital Commercial Properties, Inc. v. Vina Enters., Inc.*, 250 Va. 290, 294, 462 S.E.2d 74, 77 (1995). "Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties." *Id.* at 295, 462 S.E. at 77 (quoting *Berry v. Klinger,* 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)). Second, the Court should endeavor to read the agreement as a whole, so that each part has a meaning. *Pocahontas Mining LLC v. CNX Gas Co., LLC,* 276 Va. 346, 353, 666 S.E.2d 527, 532 (2008) (citing *Am. Spirit Ins. Co. v. Owens,* 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001); *Lansdowne Dev. Co. v. Xerox Realty Corp.,* 257 Va. 392, 401, 514 S.E.2d 157, 161 (1999)).

The Court concludes that the language in Section 4.1 is plain and unambiguous. A contract is ambiguous "when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Pocahontas Mining LLC,* 276 Va. at 353-54, 666 S.E.2d at 531. "The mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous." *Id*. at 353, 666 S.E.2d at 531. The question of whether a contract is ambiguous presents an issue of law. *Id*. at 352, 666 S.E.2d at 530.

The Declarant argues that the beginning word – "including" – should be read to be "inclusive," and not "exclusionary," that is to say, it "does not *exclude* land from being withdrawn but emphasizes what is *included* in that right." Defendants' Opposition to the

8

Association's Motion (Docket No. 24), p. 24 (emphasis in original).  But this reading relies entirely on the word "including," and ignores what follows, the phrase "in excess of allocated spaces."  In the Court's view, the phrase used in Section 4.1, "*including parking spaces thereon in excess of allocated spaces*" is functionally no different from the phrase "*excluding the allocated spaces*."

The Declarant argues that, between Section 4.1 and the Exhibits to the Declaration, the Exhibits are the more specific, and the Court should look to the more specific Exhibits.  However, while the Exhibits may depict the parking spaces, they don't say anything about the Declarant's ability to withdraw allocated spaces from the Condominium.  Further, Exhibit A-1 is the legal description by metes and bounds of Parcel 3-A, and Exhibit C-1 is the Plat of the entire property, including a depiction of the Withdrawable Land (Parcel 3-A).  Neither Exhibit A-1 (which doesn't show any parking spaces at all), nor C-1, give the reader any clue as to the ability of the Declarant to withdraw the previously allocated parking spaces.  In this regard, the language of Section 4.1 is, in fact, the more specific on this particular point.

It is possible that the Declarant meant, in the Declaration, to say "in excess of the spaces allocated *to the individual unit owners*," which might have allowed the Declarant to do what it attempts to do here, because the unit owners would have been left with 250 parking spaces and this might have given the Declarant a sufficient number of parking spaces to withdraw the land and obtain site plan approval.  However, this is not the kind of error that can be described as a scrivener's error.  A scrivener's error is one that is "'demonstrably contradicted by all other documents.'"  *Westgate at Williamsburg Condo. Ass'n, Inc. v. Philip Richardson Co., Inc.,* 270 Va. 566, 575, 621 S.E.2d 114, 119 (2005) (quoting *Wellmore Coal Corp. v. Harman Mining Corp.,* 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002)).  In the case of a Condominium

Declaration, the *Westgate* case describes a scrivener's error as "an inadvertent, singular mistake, easily understood with reference to the remainder of the Condominium Declaration." *Westgate*, 270 Va. at 578, 621 S.E.2d at 120. Examples of scrivener's errors include instances where the scrivener "had transposed a call in the metes and bounds description, recited an erroneous deed book reference or similar error." *Id*. at 577, 621 S.E.2d at 120. This is not the kind of error that can be described as a scrivener's error. In any event, the Declarant does not maintain that the language of Section 4.1 was the product of a scrivener's error.[3]

The Declarant argues, finally, that the Association's interpretation of Paragraph 4.1 vitiates the intent of the Declarant to allow a withdrawal of the Withdrawable Land. This is not entirely so. The Declarant has an inarguable right to withdraw the land; it just can't re-allocate the previously allocated parking spaces under the plain terms of the Declaration. *See* Va. Code § 55-79.43(D) (declarant cannot submit site plans that may affect the Condominium, without the consent of the unit owners' association, after the period of declarant control has expired).

For these reasons, the Court will grant the Association's Motion, in part, and deny the Declarant's Motion, insofar as the language of the Declaration is concerned. The Declarant cannot re-allocate the previously allocated parking spaces, and therefore, the Association's Motion is granted in part. For the same reason, the Declarant's Motion will be denied.

    2. *The Declarant's Argument of Equitable Estoppel.*

As an alternative argument, the Declarant maintains that the Plaintiff is equitably estopped to argue in derogation of the Declarant's asserted right to proceed in this manner. In

---

[3] As well, scrivener's errors are those "evidenced in the writing that can be proven without parol evidence." *Westgate*, 270 Va. at 576, 621 S.E.2d at 119 (quoting *Estate of Blakely v. Federal Kemper Life Assurance Co.*, 640 N.E.2d 961, 966 (Ill. App. 2d 1994)). Here, the references to the plats attached to the Declaration would not be parol evidence; the Haas Declaration would be.

order to prove equitable estoppel, the Declarant must prove "by clear, precise and unequivocal evidence" the following elements:

> (1) a material fact was falsely represented or concealed; (2) the representation or concealment was made with knowledge of the facts; (3) the party to whom the representation was made was ignorant of the truth of the matter; (4) the representation was made with the intention that the other party should act upon it; (5) the other party was induced to act upon it; and (6) the party claiming estoppel was misled to his injury.

*Va. Elec. and Power Co. v. Norfolk S. Ry. Co.,* 278 Va. 444, 475, 683 S.E.2d 517, 534-35 (2009) (quoting *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.,* 221 Va. 81, 86, 266 S.E.2d 887, 890 (1980)).

First, the Declarant argues, each of the condominium owners received notice of the condominium documents, when they purchased their units. All of the unit owners are described by the Association as sophisticated, commercial owners. Salerno Aff., ¶ 17. It is clear that each of the unit owners had notice of, and signed off on, the condominium Declaration and the related documents, and therefore, each of the unit owners had notice of the potential for a withdrawal of Parcel 3-A. However, as the Court held above, while the Declaration gives the Declarant the unequivocal right to withdraw the land, the Declaration does not give the Declarant the right to re-allocate the parking spaces. To the contrary, the plain and unambiguous language of the Declaration states that the parking spaces will not be re-allocated. Declaration, ¶ 4.1. Accordingly, the unit owners are not estopped by virtue of their receipt, and acknowledgment of, of the Declaration and related documents.

The Declarant argues further that the Association is estopped because its representatives attended a meeting with the Declarant's representatives on May 15, 2007, at which the Association's representatives did not object to the proposed Site Plan. Salerno Aff., ¶ 22 -23 ("The Association's representatives made no objections to the withdrawal of Parcel 3-A, to the

Site Plan, or to any of the other information presented to them"). The Association, on the other hand, affirmatively states that "at no time during the meeting, nor before or after, did the Declarant seek or ask for the approval of the Association to go forward with its proposed plan." Docos Aff., ¶ 4. The Association states that during the meeting, "the Association did not offer any official comment, positive or negative, or give any consent on the proposed site plan, or any portion thereof." *Id.* at ¶ 5. It is apparent that what was, and what was not, said at the May 15, 2007 meeting is factually contested. Given the standard of proof cited above, of "clear, precise and unequivocal evidence," which is applicable on a motion for summary judgment, the case is a close one. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("the substantive law will identify which facts are material"). At the same time, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The Court, therefore, will need to hear the testimony of the witnesses, and the matter simply is not appropriate for resolution on summary judgment.

Finally, the Declarant argues, the Association sat idly by, while the Declarant went forward, at great expense, with approval of its Site Plan with Fairfax County. Salerno Aff., at ¶¶ 24-25 ("The Association and its members did not object to the Site Plan while it was being considered by the Works Department"). At oral argument, counsel for the Declarant conceded that there is no provision in the Virginia Condominium Act, nor in the Fairfax County Zoning Ordinance, that would require an adjoining landowner to formally object to a Site Plan or be forever bound by it, particularly when it comes to issues of title and ownership (as opposed to use of the property). Indeed, the Circuit Court of Fairfax County, where the property is located, has held that the County's Department of Environmental Management's decision to disapprove a

site plan on the ground that a portion of the land was not properly withdrawn under the Condominium Act, was arbitrary and capricious. *Dorn v. Fairfax County Bd. of Supervisors*, 28 Va. Cir. 133 (Va. Cir. Ct. 1992). Relying on *Holland v. Johnson*, 241 Va. 553, 403 S.E.2d 356 (1991), the Circuit Court held that decisions of law as to property rights (there, as here, whether a portion of the land was properly withdrawn), were beyond the Department's administrative powers. *Dorn*, 28 Va. Cir. at 137.[4]

Rather, the Declarant argues that, without reference to the Condominium Act or the Zoning Ordinance, under common law equitable estoppel cases, the Association is equitably estopped from objecting at this point. Here again, the issue of equitable estoppel relating to the County's approval of the Site Plan, is a heavily contested matter. The Declarant says that the Association did nothing, and sat idly by while it proceeded with its Site Plan. Salerno Aff., ¶¶ 24-25. The Association asserts, for its part, that "certain unit owners, including [Mr. Docos], contacted Fairfax County to express concerns about the site plan," Docos Aff., ¶ 8, and that they "met with the Fairfax County Assistant Zoning Administrator and the Chief of Site Plan Review, separately, to express [their] concerns." *Id.* at ¶ 9.

Given this dispute of fact, the issue of equitable estoppel is not amenable for resolution on cross-motions for summary judgment. Accordingly, the Declarant's Motion will be denied insofar as it seeks a ruling of the Court that the Association is equitably estopped. The Association's Motion will be granted (per Part 1, above) on the issue of the plain language of the Declaration, but denied as to the issue of equitable estoppel.

---

[4] Under the current site plan procedures for Fairfax County, although the applicant must include a certificate as to the applicant's source of title, (Sec. 110-103(e)), the review standards (Sec. 110-105) do not include a review of title matters, and the administrative agencies are generally not expected to be involved in title matters.

**Conclusion**

The Court will grant the Plaintiff partial summary judgment as to the plain meaning of the Declaration. The Court will deny the Defendant's Motion for Summary Judgment on the same issue. The Court will set the matter for a trial on the Defendant's equitable estoppel claim and any other matters not resolved by this Memorandum Opinion and the accompanying Order.[5] The Court will enter a separate Order reflecting the above rulings, and setting a status hearing for further proceedings in this case.

Date: _____    _____
                                 Brian F. Kenney
                                 United States Bankruptcy Judge

---

[5] The reference to "other matters not resolved by this Memorandum Opinion" refers, for example, to the Association's claim that the Declarant is attempting in its Site Plan to re-allocate unused Floor Area Ratio (F.A.R.) from the Association's property to Parcel 3-A, and whether the Declarant has the right to do so. However, it is not clear to the Court whether the Declarant would intend to proceed with an alternative Site Plan in light of the Court's ruling on the merits above, and if so, whether an alternative Site Plan would include a proposed transfer of F.A.R. Therefore, it is not clear to the Court whether the F.A.R. issue is moot in light of this Memorandum Opinion and Order. The Court will request that the parties advise it, at the status hearing, of all issues that remain open for resolution by the Court.

Copies to:

Donald F. King, Esquire
Odin, Feldman & Pittleman
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
Counsel for the Plaintiff

Robert M. Marino, Esquire
Redmon Peyton & Braswell, LLP
510 King Street
Suite 301
Alexandria, VA 22314-3143
Counsel for the Defendant